LANG v. H. W. WILLIAMS TRANSPORTATION LINE.

1. MASTER AND SERVANT—NEGLIGENCE—FIRE ON BOAT—ABSENCE OF WATCHMAN.

The owner of a steamer tied up for the winter is not guilty of negligence in failing to keep a night watchman, rendering him liable for the death of one of the crew, who perished in a fire that broke out at night while he, with several others, who had remained on board to prepare the boat for the winter, was asleep, where the only fire on the boat was in a pony engine used for heating the cabins, and in kerosene lamps used for lighting.

2. SAME—ASSUMPTION OF RISK.

One of the crew of a steamer, who sleeps on the boat after

it is tied up and being prepared for the winter, assumes any risk of fire incident to the failure to keep a night watchman, where he is familiar with the boat, knows of the method of lighting and heating it, and that no night watch is maintained.

Error to Van Buren; Buck, J. Submitted October 7, 1898. Decided December 28, 1898.

Case by Ella M. Lang, administratrix of the estate of Joseph M. Lang, deceased, against the H. W. Williams Transportation Line, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

*T. J. O'Brien* and *James H. Campbell* ( *William H. Condon*, of counsel ), for appellant.

*Gore & Harvey*, for appellee.

MOORE, J. This suit was commenced to recover damages on account of the death of Joseph M. Lang, who was in the employ of the defendant upon the steamer City of Kalamazoo, as one of her crew. This steamer was partly burned in November, 1896. Mr. Lang lost his life in the fire. The plaintiff recovered a judgment in the court below, from which judgment defendant has appealed. Nearly all the assignments of error relate to the charge of the court as given, or to the refusal of the judge to grant defendant's requests. If there was any case at all to be submitted to the jury, it was fairly submitted by the trial court. In our view of the case, the only question open for discussion is, Did the plaintiff make a case which entitled her to recover?

There is not much conflict of testimony in relation to the important questions of fact. The record discloses that during the season of 1896 the City of Kalamazoo, a passenger and freight steamer, was navigating Lake Michigan. Her home port was South Haven. Mr. Lang was a mem-

119 MICH.—6.

ber of the engineer's crew all the season,—first as a fireman, and then as oiler. In the winter he lived on a small farm, and for several summers he was a sailor. On the 22d day of November, 1896, the steamer was brought to South Haven, to be laid up for the winter. The crew consisted of 16 persons. Six of them, including two watchmen, were known as the "captain's crew." There were five persons in the cabin crew. Five persons, including Mr. Lang, constituted the engineer's crew. After entering the port, the steamer was tied up to the dock of the defendant, where she was to remain during the winter. The work of preparing her was at once commenced. It was the duty of the captain's crew to gather up the floats, life-preservers, lines, chains, and other things of that character, and prepare the life-boats and rafts for the winter; it was the duty of the engineer's crew to prepare the engine and boiler for the winter; while the cabin crew removed the bunks, beds, and furniture, and cleaned the cabin. The work of the captain's crew was finished first. On Friday, the 27th day of November, the members of this crew were paid off, and left the boat. The day before this the fires under the boiler had been put out, and the water removed from the boiler. The other crews had not completed their work. There was a small upright pony boiler on the main deck. After the fires were drawn from the large boiler, this small boiler was used to warm the cabins by means of two radiators. It was in charge of the engineers and oiler. The lights used in the evening were four to six ordinary kerosene-oil lamps. There was a fire in the pony boiler during Sunday, and for at least a portion of Sunday evening it was in charge of Mr. Lang. Nearly all the members of the crews remaining on the boat, including Mr. Lang, continued to sleep and eat upon the boat. Previous to leaving the boat, the captain testified, he went to the engineers, and told them he had got through with his crew, and he and they were about to leave the boat, and that whatever duties there were in the boat the engineers must look after. No watchman was

kept after the captain and his crew left. About 3 o'clock Monday morning the boat was discovered to be on fire. When the fire was put out, Mr. Lang was found about 18 feet from his berth, dead. It is claimed on the part of the plaintiff that, as long as part of the crew were sleeping upon the boat, it was negligence not to keep a watchman, and that, if a watchman had been kept, Mr. Lang would not have lost his life.

It is a somewhat significant fact that notwithstanding our vast inland seas have been navigated for many years by hundreds of vessels, employing thousands of men, the industry of counsel has not enabled them to call the attention of the court to a case involving the question as to whether, under such circumstances as disclosed by this record, the owner of the vessel is liable. There is no claim the steamer was in a hazardous place. She was not at this time carrying passengers. There was no steam in her boiler, and no fire in her furnaces. What oil she carried was in an iron-lined oil-room, which was undisturbed by the fire. The pony boiler was not larger than the boiler used for heating purposes in an ordinary modern dwelling. The steamer was not in motion so that oil lamps were likely to be thrown from their places. No more lamps were used than are usually used in an ordinary dwelling by a family of usual size. It was not shown that it was customary to keep watchmen after the captain's crew left the boat. Such evidence of custom as was introduced tended to show that watchmen were not kept under the circumstances disclosed by the record. It is true, nine persons slept upon the steamer, but that is not more than is frequently to be found in dwellings. Section 4477, Rev. Stat. U. S., provides that every steamer carrying passengers, during the night, shall keep a suitable number of watchmen to guard against disasters and give alarms; but no such duty is imposed by statute in cases like the one at issue. Was there any such negligence at the common law as to create liability upon the part of the owner? In *Michigan Central R. Co.* v. *Coleman,* 28

Mich. 440, it is said negligence is nothing more nor less than a failure of duty. In another case it is said negligence consists in a want of that reasonable care which should be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury. *Detroit,. etc., R. Co.* v. *Van Steinburg,* 17 Mich. 118. Would a man of ordinary prudence, under the existing circumstances, anticipate any danger of injury to any of the crew because of the absence of a watchman? The cook, the engineers, and other members of the crew, knew that after Thursday night the watchmen were not there, but they did not regard their absence as such a source of danger as to prevent them from sleeping upon the steamer. We do not think it can be said there was a want of reasonable care upon the part of the owner in not keeping a watchman after Thursday night; but, if this could be said, we think there is a difficulty in the way of plaintiff's obtaining judgment.

As already stated, before the crew of the captain was withdrawn, the engineers were informed that the crew, including the watchmen, were to leave the boat, and that it must be looked after by the engineer and his crew. It is urged upon the part of the plaintiff that this notice was not brought home to Mr. Lang, and that the master cannot avoid responsibility by delegating his duty to another; citing *Pullman Palace-Car Co.* v. *Laack,* 143 Ill. 242 (18 L. R. A. 215). An inspection of this case shows that no notice of the changed condition was given, either to the plaintiff or to the gang of men with whom he worked, and there was no opportunity for him to know of the changed condition until the accident occurred. In disposing of the case the court uses the following language:

" If, by reason of the omission to supply the usual and ordinary means to prevent accident, the hazard to its servants was increased, and the change in appliances was not known to the servants, or so open and visible that they, by the exercise of ordinary care, would see and know of it, the legal duty rested upon the master to notify them

of the increased danger to which they were thereby exposed; and, it being a duty owed by the master to the servant, it could not delegate that duty to another, even though a fellow-servant of appellee, and absolve itself from liability for the injury resulting in consequence of the failure to communicate knowledge to appellee of the increased hazard."

It is true, the record does not show the captain informed Mr. Lang that he and the watchmen were going to leave; but was not their absence so open and visible that Mr. Lang, by the exercise of ordinary care, would know this crew of 6 men were no longer upon the boat? The other members of the crew, who were witnesses, knew the captain and his crew had left the boat. The cook testified those remaining on the boat knew the captain and his crew were gone. Does any one believe that 6 out of 16 persons employed upon a small boat like this could leave the employment for the season, without the remainder of the crew knowing it? The men all got their meals in a common dining room. Their work was all upon a comparatively small steamer, where all, or nearly all, of them stayed nights. It is too improbable to believe that Mr. Lang did not know that the captain and his crew left the boat Friday afternoon, and that after that date the steamer was without a watchman. He was not unfamiliar with the life of a sailor; he had sailed for a number of years. He was not unfamiliar with this steamer; he had been with it through the season. He was not unfamiliar with the pony boiler; he was in charge of it for at least a part of the day before his death. Nor was he unfamiliar with the method of lighting the steamer. If the situation was a dangerous one, Mr. Lang was as familiar with the danger as any one. He was under no obligations to remain upon the boat, if by doing so he incurred a danger. It is evident that neither he nor the other members of the crew believed they were incurring any danger by remaining on board the vessel. If, by sleeping upon the steamer, Mr. Lang incurred a risk, he,

being fully advised of the circumstances, must be regarded as assuming the risk. *Soderstrom* v. *Lumber Co.*, 114 Mich. 83; *Hayball* v. *Railway Co.*, Id. 135, and cases cited therein; *Jacobs* v. *Railway Co.*, 84 Mich. 299; *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St. Rep. 336 ).

We think the court should have directed a verdict in favor of defendant.

Judgment is reversed, and no new trial ordered.

The other Justices concurred.