### SECCOMBE v. DETROIT ELECTRIC RAILWAY.

1. STREET RAILWAYS — INJURY TO EMPLOYÉ — COLLISION — PROXIMATE CAUSE.

Where plaintiff, a street-railway motorman, was injured by a collision with a car which was being backed on the same track on which his car was being operated, for the purpose of obtaining relief for a car which had been derailed by reason of a defect in the track some distance ahead, the defect in the track was not the proximate cause of the injury.

2. SAME—BACKING CARS—RULES—SUFFICIENCY.

Where a street-railway company had promulgated a rule that cars should not be started backward until the motorman should receive three bells from the conductor, who should remain on the rear platform while the car was moving backward, the failure of the company to adopt other rules regulating the running of cars backward was not negligence justifying a recovery for injuries to a motorman in collision with a backing car; it not appearing that other or different rules were in use on other roads, regulating such operation of cars.

3. SAME—ASSUMPTION OF RISK.

Where a street-railway motorman knew that cars were operated backward, on some occasions, without red lanterns being carried on the rear thereof, and that the company had not established telephone connections to warn following cars of a car being operated backward, he assumed the risk of the operation of such cars without such precautions.

4. SAME—NEGLIGENCE OF CONDUCTOR.

Negligence cannot be predicated upon the act of the conductor

of an electric car in jumping therefrom to escape an impend-
ing collision, after he has signaled the motorman to stop, and
done all that he can to avert the accident.

5. MASTER AND SERVANT — INJURY TO EMPLOYÉ — INCOMPETENT
SERVANTS—BURDEN OF PROOF.

Before a master can be held liable for injuries to an employé
on the ground that he had in his employ an incompetent ser-
vant, it must appear that he had been negligent either in
employing or retaining such servant, and the burden of proof
is upon the plaintiff.

6. SAME—STREET RAILWAYS—INCOMPETENCY OF CONDUCTOR—EVI-
DENCE.

In an action against a street-railway company for injuries to
an employé, alleged to have been due to the incompetency of
a conductor in its employ, witnesses testified that the con-
ductor was slow in ringing bells, and was liable to get excited
and give wrong signals; that his reputation for competency
was "not the best;" that he was short, and had to stand on
tiptoe to reach the bell cord, which made him slow in emer-
gencies; but none of the witnesses had ever heard of his hav-
ing an accident, or reported him as incompetent to the com-
pany or the "union." *Held,* insufficient to raise a presump-
tion that defendant knew or ought to have known of his
alleged incompetency, or to show that it should have removed
him had it known all the facts testified to.

Error to Wayne; Donovan, J. Submitted December
3, 1902. (Docket No. 140.) Decided May 12, 1903.

Case by Frederick W. Seccombe against the Detroit
Electric Railway for personal injuries. From a judgment
for defendant on verdict directed by the court, plaintiff
brings error. Affirmed.

*Thomas Kissane* and *Lehmann & Riggs,* for appel-
lant.

*Corliss, Andrus, Leete & Joslyn,* for appellee.

HOOKER, C. J. The plaintiff was a motorman on
defendant's railroad. He was injured by reason of his
car coming into collision with another car which was
backing up. At the point of collision there were two

tracks, and cars were not expected to run both ways upon either. It is claimed that the reason for it on this occasion was the derailment of a third car at a point about a mile or more distant from the place of the collision, where there was a switch, and a worn rail, which had on two or more previous occasions caused the defendant's cars to leave the track. The court directed a verdict for the defendant, and the plaintiff has appealed.

The negligence alleged and relied upon appears to be:

1. That Drouillard, the conductor, and the motorman of the car which was being run backward were incompetent.

2. That the track was in bad condition, and therefore caused cars to be derailed at the switch, thus making it necessary to back the next car to another switch.

3. That defendant neglected to provide and furnish rules by which its servants could operate its cars with safety when backing up.

At defendant's car barn there was a switch, by means of which a car might pass from one track to the other. The next such switch was a mile or more distant, and it was at the last-mentioned switch that the car was derailed. Plaintiff says that this derailment was due to a worn rail, and that such derailments had occurred there before, and on such occasions the next car would have to back up to the car barn before it could be switched upon the return track. On two or three occasions the plaintiff had known of the cars being backed to the barn, and he had done so with his car. On this occasion he passed the barn at 8 o'clock in the evening, and the collision occurred a little later, when he met the preceding car backing up. The trolley wires were supported by posts set between the tracks, and defendant's counsel contend that, had not the two cars been upon the same track, these poles would have intercepted plaintiff's line of vision to the other car, not otherwise, and that this should have been notice to him, the failure to observe and heed which was contributory negligence in him. No testimony was introduced by the defendant.

On the night of the accident, the car second in advance of plaintiff's car ran off the track, and made an obstruction. The next car to arrive was in charge of Drouillard, as conductor, and Clixby, as motorman; and they were asked to carry word to the barn, a distance of a mile and a half, to send relief. There was no way to do this but to back the car to that place, which they proceeded to do. The alleged defect was that there was a worn rail or point of a switch at the Y, which on some occasions had derailed the cars. The worn rail was not the proximate cause of the injury, if it was a remote one. *New York, etc., R. Co.* v. *Perriguey*, 138 Ind. 416 (34 N. E. 233, 37 N. E. 976); *Jackson* v. *Railway*, 13 Lea, 492 (49 Am. Rep. 663); *Fawcett* v. *Railway Co.*, 24 W. Va. 760; *De Camp* v. *Sioux City*, 74 Iowa, 392 (37 N. W. 971); *Kistner* v. *City of Indianapolis*, 100 Ind. 211; *Lewis* v. *Railway Co.*, 54 Mich. 55 (19 N. W. 744, 52 Am. Rep. 790); *Selleck* v. *Railway Co.*, 58 Mich. 199 (24 N. W. 774). See, also, cases cited in opinion in case of *Noe* v. *Railway Co.*, *ante*, 162 (94 N. W. 747).

We are asked to hold that it should have been left to the jury to say whether this accident was not due to the want of some reasonable and necessary rule for the backing of cars. The record shows that a printed rule required that "motormen must not start their cars until receiving either two bells or the word 'Right' from the conductor, nor start the car backward before receiving three bells from the conductor, who must remain on rear platform while car is moving backward." We are not advised that any other or different rule is in use on any street railway in the country. Counsel suggest that the company should have established telephone connection with the Y, or should have required red lights on the rear of cars.

It requires more than the production of authorities asserting that it is the duty of railroads to promulgate reasonable rules for the running of trains to establish the fact that a defendant has been negligent in that respect. In *Niles* v. *Railroad Co.*, 43 N. Y. Supp. 751, it was said:

"The doctrine imposing liability upon railroad companies for failure to adopt particular rules, the necessity for which was not apparent to them, should not be unduly or unreasonably extended. And since the company has a paramount interest in protecting its property from injury or destruction, and also in avoiding all liability for damages to employés and passengers, * * * these considerations must have some weight in determining whether the omission to promulgate a particular rule constitutes a neglect of duty in not being able to foresee certain contingencies."

And in the case of *Berrigan* v. *Railroad Co.*, 131 N. Y. 582 (30 N. E. 57), it was said:

"There is no proof in the case that rules for such a case had ever been promulgated by any other railroad company, or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule. The learned trial judge submitted to the jury the question whether the defendant was at fault in omitting to make and publish such a rule. This opened to the jury a wide field for speculation and conjecture. In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads, or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury. Besides, it affirmatively appeared that the rules in use by the defendant provided in a reasonable way against the occurrence of such an accident, so far as such casualties can be prevented by rules."

The following comment in *Morgan* v. *Iron Co.*, 133 N. Y. 666 (31 N. E. 234), is *apropos:*

"The recovery was based entirely on the absence of rules. It was not suggested at the trial, nor is it on this appeal, what particular rule the defendant could have adopted that would have been likely to prevent the accident. No evidence was given that any rule is in use in business of a similar character by other corporations of

the same class carrying on like operations, nor was there any evidence by experts or other witnesses to show that any rule was necessary or practicable in such cases. It was left to the jury to say whether or not it was a case for rules, and, if so, what particular rule should have been adopted. We know nothing with respect to the views entertained by the jury on these questions, except so far as they are indicated by their verdict for the plaintiff. It is not probable that they concluded that any definite rule should have been promulgated, but were content to 'hold that, as the plaintiff was injured, the defendant ought in some way to have prevented it, or, in case it did not, respond to him in damages. Almost every conceivable injury that a servant receives in the course of his employment may in this way be submitted to a jury, and with the same result.''

This accident occurred on a street railroad, where cars are expected to be under such control as to be stopped when the exigencies of public travel require it, and are incident to many delays that are not common upon steam roads. They are started and stopped at any and all points where occasion demands, and not in obedience to telegraph or telephone commands. As said by Chief Justice Montgomery, with the approval of the entire bench, in *Mertz v. Detroit Electric Railway*, 125 Mich. 15 (83 N. W. 1036):

''The distinction between steam railways and street railways has been often pointed out. It is a fact that must be assumed to be within the knowledge of all persons *sui juris* that a steam-railway train cannot be brought under control within a short distance, while it is equally known that street cars in cities can be kept within control sufficiently to prevent collison with vehicles lawfully on the track.''

See cases there cited.

We think the learned judge did not err in declining to submit this question to the jury.

There is another reason why plaintiff's contention should not prevail. He was not a passenger, but an employé, who was familiar with defendant's methods and rules; he knew that cars had been backed on this piece of road, and

that it was likely to happen again; he knew that the cars did not carry red lanterns upon the rear, as is customary upon steam roads, and he knew what, if any, means there were of determining whether a car was approaching or going away from him; and, under such circumstances, he may be said to have assumed the risk of such methods. *Lang* v. *Transportation Line*, 119 Mich. 85 (77 N. W. 633).

The plaintiff would have had the trial court permit the jury to find that the responsibility for this collision rested upon Drouillard and Clixby, the conductor and motorman of the car that was backing up. Our attention is not called to any evidence that tends to show that it was due to any negligence of Clixby. Hence it is unimportant whether he was competent or not.

The testimony regarding Drouillard's negligence consists in the statement that he did not stand on the back platform all of the time that his car was backing up, it being shown that he took up a fare or two from a witness who got on at Twenty-Sixth street. This was the testimony of the passenger, and he said that Drouillard was in the act of taking the fare when the collision occurred. One Phelps testified that Drouillard jumped off from the car with two others, pulling the bell, just before the accident. His jumping from the car after giving the signal to stop, and when he could do no good by remaining on the car, would not be culpable nor negligent. His negligence, if any, was his absence from the platform, where the rule required him to be, and his consequent failure to stop his car earlier. It is not for us to say that the passenger's evidence is false, or that Phelps' is true. Taken together, this testimony raised the question of Drouillard's negligence as a cause of the collision, and made the question of his competency a proper one for consideration, if his incompetency, and defendant's negligence in relation thereto, were proved, to relieve the plaintiff from the effect of the fellow-servant rule, which is otherwise clearly applicable.

Before a master can be held liable on the ground that

he has in his employ an incompetent servant, it must appear that he has been negligent either in employing or retaining him, and the burden of proof is upon the plaintiff. The presumption is that he was not negligent in either respect. *Davis* v. *Railroad Co.*, 20 Mich. 105 (4 Am. Rep. 364); *Michigan Cent. R. Co.* v. *Dolan*, 32 Mich. 509; *Walkowski* v. *Consolidated Mines*, 115 Mich. 629 (73 N. W. 895, 41 L. R. A. 33). Drouillard had worked for defendant about 10 weeks. One witness testified that, in his opinion, he was slow to act,—slow in ringing bells and stopping his car,—and could not grasp two or three ideas at a time. He did not testify to his general reputation. This witness did not inform defendant that Drouillard was not competent, although himself its employé, and he never told the union to which they both belonged. Henry Benns testified that he knew his reputation. He was then asked, "What was it,—competent or incompetent?" He did not answer the question asked, but replied, "Well, he was not competent to run a car." He was then asked what he had seen him do, and he said he had seen him get excited and give two bells when he ought to give one. On cross-examination he said he never reported him to the company or the union,— never told anybody; *had never heard of his having any accident*, except once, when *this plaintiff ran into his car*. Walter Smith testified that Drouillard's reputation was "not the best;" that "he was said not to be a good conductor, in that he was slow at times, and not quick to catch ideas;" and that it was common rumor that he had been excluded from operating certain lines of the defendant; and he also testified that he was short, and had to stand on his tiptoes to reach the bell cord, which would make a man slow in an emergency. John Hetherington said that he knew his reputation, and, when asked what it was, replied: "Well, what I could see, I judge he was incompetent; he was incompetent." On cross-examination he said he never heard anybody say he was incompetent, and did not understand the court's question to be what

other people said about him; that what he said to the court was what he saw; and that he could not ring the bell and start the cars as quick as some, because he was short.   He never reported him as incompetent, and never heard of his having an accident.   If it can be said that all of the foregoing raised a question as to the fact of Drouillard's incompetency, it failed to raise any presumption that defendant knew it or ought to have known it, or that it should have removed him if it did know all that these witnesses testified to.

The judgment is affirmed.

The other Justices concurred.