BARTO v. DETROIT IRON & STEEL CO.[1]

1. APPEAL AND ERROR—REVIEW — SCOPE — DIRECTED VERDICT —
OPENING STATEMENT.

Where, after the court had disclosed his intention of directing
a verdict for defendant on the opening statement of plain-
tiff's counsel, counsel attempted to amend his statement so as
to remove a misapprehension of the facts, but was denied and
told to take his exception and make his statement to the sten-
ographer after the charge, which he did, the statement so
made received the same consideration in this court as though
made before the conclusion of the charge.

2. SAME—DIRECTED VERDICT—FACTS ESTABLISHED.

Where, after the court had disclosed his intention of directing
a verdict for defendant on the opening statement of plaintiff's
counsel, counsel offered a witness by whom he offered to prove
the facts alleged in the declaration, and was denied, the ma-
terial facts alleged must be considered by this court as estab-
lished.

3. MASTER AND SERVANT — INJURIES TO SERVANT — ACTION —
DIRECTED VERDICT—PROPRIETY.

In an action for negligent personal injuries to defendant's ser-
vant resulting in death, caused by his being sent to work un-
der a chute where, without his knowledge, pigs of iron were
dropped from time to time, the declaration and the opening
statement of plaintiff's attorney examined, and *held*, error to
direct a verdict for defendant thereon on the ground that the
negligence was that of a fellow-servant.

Error to Wayne; Rohnert, J. Submitted November
18, 1908. (Docket No. 60.) Decided December 14, 1908.

Case by Carlo Barto, administrator of the estate of
Francis Kopovics, deceased, against the Detroit Iron &
Steel Company for the negligent killing of plaintiff's in-
testate. There was judgment for defendant on a verdict
directed by the court, and plaintiff brings error. Re-
versed.

[1] Rehearing denied March 3, 1909.

*Dohany & Dohany,* for appellant.

*Brennan, Donnelly & Van De Mark,* for appellee.

BLAIR, J.   A verdict was directed for the defendant on the opening statement of plaintiff's counsel, for the reason that it conclusively appeared from such statement that the negligence for which plaintiff claimed the right to recover was the negligence of one Sawyer, who was a fellow-servant of plaintiff in defendant's employ.

The defendant is engaged in the manufacture of pig iron.   After the pigs are formed, they are carried by a traveling crane operated by electric power to certain breaking apparatus, where the pigs are broken apart, fall into a chute, and are conveyed thereby into a freight car placed underneath the chute for that purpose.   The traveling crane and the breaking apparatus were operated by Sawyer.   Plaintiff's intestate began work for defendant on the night of February 14, 1905, and was killed the next night by a pig falling upon him while he was clearing the rails beneath the chute so that cars could be placed beneath it.   After the trial judge had indicated his intention to direct a verdict, plaintiff's counsel called the operator, Sawyer, who had been sworn, to the witness stand, and made the following statement:

"Plaintiff is prepared to prove his case and has placed upon the stand a witness to prove it.   He offers the witness for the purpose of sustaining the facts alleged in his declaration."

In the course of the court's instructions to the jury, the following occurred:

"*The Court:* It appears that the arrangement is such that these pigs are not supposed to be dropped unless there is a car there, and it is the duty of the operator to conduct it in such a way by not placing them in the breakers or near the chute so that they will drop upon the floor, not to break them until such a time as a car is there.

"*Mr. Dohany:* In deference to my client it is my duty—

"*The Court:* Take your exception. Don't interrupt me.

"*Mr. Dohany:* I must. I must. My duty places me in a position that I must in behalf of my—

"*The Court:* You may make your statement to the stenographer after I get through with my charge to the jury. * * *

"*Mr. Dohany:* Before a verdict is directed I want to make an amendment to your honor's statement of fact.

"*The Court:* And, furthermore, gentlemen of the jury— Now, Mr. Dohany, you stop. I consider that the principle laid down in this case of 131 Mich. 594 applies to this case in connection with the situation that I have outlined and also independent of it. Before I direct a verdict, I desire to say that the case reported in the 131 Michigan I think applies.

"*Mr. Dohany:* Before your honor directs a verdict, I desire to correct—

"*The Court:* Take the verdict, Mr. Clerk.

"*Mr. Dohany:* It is my duty to the court and on my honor as an attorney it is my duty to my client—

"*The Court:* If you speak further, I will fine you; that is the end of it."

At the conclusion of the instructions, plaintiff's counsel made the following statement upon the record:

"Your honor's conclusion that the premises were so situated that the operator of the bridge might know that there was a car underneath or not underneath is entirely wrong. As a matter of fact, from the position that he occupied, the operator could not possibly know whether or not a freight car was underneath the chute ready to receive the pigs as they fell below. We are prepared to show, also, that he had no notice whatever that the freight car had been removed. We were also prepared to prove that pigs were often broken up and sent down through the chute when no freight car was underneath the chute. Because of the shortage of freight cars, it would stop the operation of the whole plant if that rule were followed. We are also prepared to prove that the operator of the bridge on the night in question was entirely free from negligence, and also that the deceased was entirely free from negligence."

Under the ruling of the court that plaintiff's counsel

should make his statement to the stenographer after the charge was finished, we think such statement should receive the same consideration as though made before the conclusion of the charge.   Since the plaintiff's counsel offered to prove by the witness Sawyer, who operated the crane and breaking apparatus, the facts alleged in his declaration, such material facts must be taken as established.   The statements of the plaintiff's counsel before and after the direction of the verdict and the allegations of the declaration, considered together, would warrant a finding:   That defendant caused one of its freight cars, which had been placed under the chute for loading with pigs by its operator, to be removed from under the chute while it was only half loaded, without giving notice thereof to its operator.   That the operator's position in performing his duties was such that he could not see whether or not there was a car under the chute, and, as a matter of fact, he was ignorant of the moving of the half loaded car.   That the place where the plaintiff's intestate received the injuries that resulted in his death was entirely separate and distinct from plaintiff's intestate's ordinary place of employment under his hiring with the defendant, and it was no part of his regular employment to clean ice off of the tracks in question, or sand.   That he never was called upon to do that work before; the work being entirely outside of the casthouse.   That defendant's foreman and superintendent, who took plaintiff's intestate away from his regular employment on the night in question and sent him in underneath the chute where he was killed, had sole charge of all the men engaged in defendant's yards outside of the casthouse, and hired and discharged all men under him for defendant.   That the falling of the pig that killed plaintiff's intestate was caused by Sawyer, defendant's operator of the bridge, continuing to operate the bridge in ignorance of the presence of plaintiff's intestate below the chute.   That defendant and its foreman and superintendent knew that pigs weighing

155 MICH.—7.

from 250 pounds to 300 pounds were dropping at frequent intervals of not more than five minutes down through the chute in question, and well knew that it was dangerous to the life of any man to go underneath this chute while the bridge in question was being constantly operated for the purpose of bringing pigs in between the bumper and the plunger. That plaintiff's intestate did not know of such danger, received no warning of such danger, and that defendant and its foreman and superintendent at the time plaintiff's intestate was killed sent him to work underneath that chute knowing that the plaintiff's intestate did not know of such danger. And that defendant did not establish and maintain a system of signals whereby said bridge operator could know that plaintiff's intestate was underneath said chute.

We are of the opinion that the court should have received the testimony of the witness Sawyer, and that it was error, under the circumstances, to direct a verdict.

The judgment is reversed, and a new trial granted.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.