DUNN *v.* GREAT LAKES DREDGE & DOCK CO.

1. MASTER AND SERVANT—ASSUMED RISK—APPARENT DANGER.

A servant engaged in work near a car which is being loaded with a steam shovel that has previously, as the servant knew, dropped large stones off the car in dumping its load, and that is in operation while he is so engaged, assumes the risk of the falling of a rock outside the car.

2. SAME—WARNING SERVANT—SIGNALS.

A foreman, who knows of the impending discharge by the shovel from the noise and action of the machinery, of which plaintiff had notice as soon as the foreman, is under no obligation to warn him of the danger.

3. SAME—SIGNALS—RISK ASSUMED.

The risk of operation without signals is assumed by an employé who performs his duties and continues in the employment knowing the failure to provide therefor.

4. SAME—SAFE PLACE—CHANGING CONDITIONS.

The master's obligation to provide a safe place does not include dangers arising by reason of conditions which change with the progress of the work.[1]

Error to Chippewa; Steere, J.  Submitted April 12, 1910.  (Docket No. 60.)  Decided June 6, 1910.

Case by James Dunn against the Great Lakes Dredge & Dock Company for personal injuries.  A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error.  Affirmed.

*F. T. McDonald,* for appellant.

*Warner & Sullivan,* for appellee.

Defendant was engaged in excavating a ship canal through rock.  The rock was first drilled with drills

_____

[1]As to servant's assumption of risk from changing condition of the working place during the progress of the work, see note to *Citrone* v. *O'Rourke Engineering Construction Co.* (N. Y.), 19 L. R. A. (N. S.) 340.

operated by compressed air, then blasted, then loaded upon dump cars by a steam shovel, which was moved forward from time to time as the work progressed. Water for the shovel and air for the drills reached those machines through pipes which had to be lengthened from day to day to keep pace with the forward movement of the work. There were two lines of track, one upon which the cars stood while being loaded by the steam shovel, and another, about 12 feet north, upon which the empty cars were returned. Engaged upon the work were several gangs of men—the drillers, the shovel gang, the track gang, the train crews, track cleaners, whose duty it was to keep the railway tracks free from loose rock, and the pipe gang, whose duty it was to keep the air and water pipes extended to the drills and shovel.

The plaintiff was a member of the pipe gang. He was a man 63 years of age, had been a mason for 35 years, sometimes taking mason contracts, and had worked for defendant two months when he received the injury complained of. One Kelly was foreman of the pipe gang. The water pipe had been extended the night before from the main on top of the bank to the bottom of the first cut, where the tracks were, under the north track and two lengths east between the two tracks. Kelly ordered plaintiff to put a cut-off valve on the end of the water pipe as the shovel needed water. At this moment there were cars standing upon the track beside the shovel awaiting loads. The shovel itself was being operated, but was at that instant engaged in "rooting," or cleaning up the bottom of the pit. Plaintiff started to affix the valve as directed, when the shovel, having secured its load, proceeded to elevate the dipper and dump its contents into one of the cars by the side of which plaintiff was working. A large rock fell from the dipper or bounded off the side of the car and struck plaintiff, breaking his leg. Plaintiff had been engaged in putting on the valve about a minute and a half, when he was struck. He was bending over his work, and the car at his side obstructed his view of the shovel. As

soon as the shovel stopped " rooting " and started to elevate the dipper, plaintiff tried to escape, but was unable to do so. During the time plaintiff had worked for defendant, he had noticed that occasionally rocks fell from the bucket upon the tracks in the operation of loading. He knew men were employed by defendant to keep the tracks free from such rocks. Plaintiff admitted that the shovel operated intermittently, and was being operated in the usual manner and without negligence at the moment of his injury. This was the first time in the course of his employment he had been required to attend the pipes while they were lying beside the tracks, upon which stood cars which were being loaded.

A verdict was directed for defendant upon the ground that plaintiff had assumed the risk, and upon the further ground, that if there was any duty to give plaintiff warning, that duty devolved upon Kelly, who was a fellow-servant. Plaintiff brings the case here for review by writ of error.

BROOKE, J. (*after stating the facts*). Did plaintiff assume the risk? It is conceded by plaintiff's counsel, that if the danger was apparent it must have been anticipated by plaintiff, and if he had express or implied notice of it, he assumed the risk of his injury. We think that the danger was apparent, and should have been apprehended by plaintiff. It must be remembered that the shovel was not at rest when he assumed the dangerous position. It was engaged in " rooting " according to plaintiff's testimony, but the testimony of his witness O'Donnell is:

" If I remember, we had not been rooting with the shovel in the pit just before we started to load this one car. I know this car was not the first on that train to be loaded, and I could not say which one it was."

It is clear that, whether " rooting " or regularly loading, the machine was being operated, as plaintiff knew, and in view of the intermittent character of its operation, which was likewise known to plaintiff, we think he must

have apprehended that at any moment the dipper would be elevated and its load discharged. He was acquainted with the fact that rocks occasionally fell from the dipper outside the cars and upon the tracks, when the dipper was emptied.

The learned circuit judge was correct in holding that plaintiff assumed the risk incident to his employment, and that his injury resulted from an event which he had every reason to apprehend. Under the circumstances of this case, did the defendant owe to the plaintiff the duty of warning him that at any moment the dipper might be raised and dumped? It is conceded that it was not the duty of any member of the shovel gang to give such warning, and that the shovel was operated without negligence, and in the usual manner. Upon whom, then, did this alleged duty rest? It is urged that it rested upon Kelly, plaintiff's foreman.

Passing the question as to whether or not Kelly was a fellow-servant of plaintiff, let us inquire into the relative positions of Kelly and plaintiff, and their knowledge of impending danger at the moment of the accident. Kelly stood within six feet of plaintiff; he had no control of the operations of the shovel, and no knowledge of the time when the dipper would be raised and dumped. It is apparent, from the record, that the shovel makes a different noise when the dipper is being elevated. That noise was heard by plaintiff and accepted by him as a warning, and he attempted to escape. He testifies: "I started to run to get out of the way, because I heard the noise of the shovel." He succeeded in taking two or three steps before the rock hit him. It is clear that the only knowledge Kelly had of the impending or actual elevation and discharge of the dipper was the identical knowledge which plaintiff himself possessed. Under such circumstances, the only warning he could give would be to advise plaintiff of a fact with which he was already familiar.

It is unnecessary to discuss the cases of *Town* v. *Railroad Co.*, 84 Mich. 214 (47 N. W. 665), *Kinney* v. *Folk-*

*erts*, 78 Mich. 687 (44 N. W. 152), *Pecard* v. *Sugar Co.*, 153 Mich. 84 (116 N. W. 532), and *Barto* v. *Steel Co.*, 155 Mich. 94 (118 N. W. 738), relied upon by plaintiff. All are clearly distinguishable upon the facts from the case at bar.

To the claim of the plaintiff that defendant should not have operated the shovel without warning, it is sufficient to say that he knew that it was operated without signals, and he accepted his employment and performed his duties with this knowledge. As to the duty of masters in such cases, we refer to 4 Thompson on Negligence, §§ 4067 and 4068; Baldwin on Personal Injuries (2d Ed.), p. 425 *et seq.* See, also, *Michigan Cent. R. Co.* v. *Austin*, 40 Mich. 247; *Jacobs* v. *Railway Co.*, 84 Mich. 299 (47 N. W. 669); *Lang* v. *Transportation Line*, 119 Mich. 80 (77 N. W. 633); *Lynch* v. *Traction Co.*, 153 Mich. 174 (116 N. W. 983, 21 L. R. A. [N. S.] 774).

The obligation on the part of the master to provide a safe place is not imposed, where dangers arise by reason of changing conditions in the progress of the work. *Petaja* v. *Mining Co.*, 106 Mich. 463 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505), and cases there cited; *Swanson* v. *Railway Co.*, 68 Minn. 184 (70 N. W. 978); *Finalyson* v. *Milling Co.*, 67 Fed. 507, 14 C. C. A. 492; *City of Minneapolis* v. *Lundin*, 58 Fed. 525, 7 C. C. A. 344; *Roytio* v. *Litchfield*, 113 Fed. 240, 51 C. C. A. 197. The place where plaintiff was injured was a safe place, except as it became unsafe through the operation of the shovel. He was familiar with the character of that operation and, through his counsel, admits that it was operated without negligence.

We must hold that a verdict was properly directed for defendant.

The judgment is affirmed.

Ostrander, Hooker, Moore, and McAlvay, JJ., concurred.