## KAARO v. AHMEEK MINING CO.

1. Master and Servant—Mines—Falling Timbers—Reasonable Care—Duty to Protect Servant.

In a personal injury action brought by a miner who received injuries from a falling timber at the mine of defendant, the court properly charged the jury that the defendant was chargeable with knowledge of all dangers to men employed at the bottom of its shaft that were liable to result from the methods adopted in timbering the shaft, which would be known to a person of reasonable skill and experience in timbering: if reasonable care was not used to protect the servant from injury due to objects falling and striking him it would be no excuse that defendant had given instructions to the timbermen or any other person to use such care for his protection, and it was a duty which defendant could not delegate so as to avoid liability. The question whether the accident was one which a prudent man would have been likely to anticipate was a question of fact.

2. Same—Negligence.

An employer cannot be held liable as for negligence in

omitting to guard against accidents that an ordinarily prudent person would not reasonably expect were likely to happen.

3. SAME—INSTRUCTIONS—BURDEN OF PROOF—TRIAL.

The trial court committed no error in charging the jury as to the burden of proof, in substance, that if plaintiff's injury resulted from a risk that was not ordinarily incident to his employment, the burden would be upon defendant to show that he knew and appreciated it, following with a full and fair statement on the subject of burden of proof.

4. SAME—EVIDENCE.

Nor was it reversible error to instruct the jury that the plaintiff had the burden of establishing his case by a fair preponderance of the evidence to their satisfaction, not only of the negligence of the defendant company, but also that the plaintiff was not guilty of contributory negligence; the court instructing the jury in other parts of his charge in a proper manner as to the point.

5. SAME—CONTRIBUTORY NEGLIGENCE—CHARGE.

The court properly submitted to the jury the issue as to the contributory negligence of plaintiff who was shown by defendant's testimony to have been in charge of the entire work in the shaft, and by uncontradicted proof to have had an opportunity to know of the condition of the timbering and method of doing it.

6. SAME—SAFE PLACE—DELEGATION OF PERFORMANCE—FELLOW-SERVANTS.

The master cannot delegate the duty to make the place safe, so as to escape liability for negligence. While the shaft was in process of construction the doctrine of safe place did not apply.

7. SAME—STAGINGS—MINES.

The duty of constructing stagings with reasonable care, and working on them, was a delegable one, and in performing the same the co-employees of plaintiff were fellow-servants for whose negligence the defendant was not responsible.

8. SAME—RISKS ASSUMED.

The charge of the court was not erroneous in submitting to the jury the question of assumption of risk, that if they found plaintiff was familiar with the methods employed in constructing stagings and openings were left

through which an object could fall, and an ordinarily prudent man of his experience would have appreciated the danger, he assumed the risk; and that a workman does not assume the risk of his employer's negligence but there are dangers connected with underground work which cannot be reasonably anticipated or foreseen, that the risk of such accident was one which the miner assumed as incident to his employment, etc.

9. SAME—SAFE PLACE.

Plaintiff, against whom the jury returned a verdict, could not complain of the action of the court in leaving the issue of failure to provide a safe place to the jury: the doctrine did not apply and the court might properly have so instructed.

10. SAME—APPEAL AND ERROR—ARGUMENTATIVE CHARGE—UNDUE EMPHASIS.

Assignments of error on the ground that the instructions were argumentative and unduly emphasized claims and propositions of law, favorable to defendant, are too general to be considered.

Error to Keweenaw; Cooper, J., presiding. Submitted November 20, 1913. (Docket No. 99.) Decided March 26, 1914.

Case by Erick Kaaro against the Ahmeek Mining Company for personal injuries. Judgment for defendant, and plaintiff brings error. Affirmed.

*Le Gendre & Driscoll,* for appellant.

*Allen F. Rees (Rees, Robinson & Petermann,* of counsel), for appellee.

STONE, J. This is an action on the case to recover damages for personal injuries sustained by the plaintiff on September 23, 1910, while he was in defendant's employment and engaged in the performance of his duties.

Defendant for a number of years prior to plaintiff's injury had been operating the Ahmeek copper mine. While plaintiff, a miner, but at the time of

the injury acting as shift boss, was engaged in moiling a start, preparatory to drilling a hole at the bottom of shaft No. 3, a studdle fell from a staging about 45 feet above in the shaft, where timbermen were engaged in timbering the shaft. This shaft was at the time being sunk through the rock. It was at that time upwards of 1,000 feet in depth and about 9x20 feet in the other dimensions. A number of men, called miners, were engaged in the work of loosening and excavating the rock at the bottom. Common laborers, called muckers, were loading rock into a bucket after the miners loosened it. The rock was hoisted to the surface by means of a bucket and hoisting apparatus. A separate gang, called the timber gang, was engaged in putting the permanent timbers into the shaft, which were being put in in sets from the surface downward. The shaft was lighted only by lamps carried by the men. A hole was left in the southerly side of the staging for the bucket to pass through. The ladder road was constructed on the northerly side of the shaft. The shaft went down nearly perpendicularly from the surface until near the point where the timbermen were working at the time and then began to curve and incline. A hole would be made in the staging to permit the passage of the miners and others up and down on the ladderway. The men below could not protect themselves against falling objects, but it was a disputed question whether the plaintiff as shift boss had any control over the timbermen, there being testimony both ways on that subject. It was the duty of the timbermen, imposed upon them by the defendant, to keep the hole and other places in the staging in as safe a condition as practicable, to prevent objects from falling down from the staging and injuring the men below, but in the course of the work of putting in new sets of timber, the staging could not be kept absolutely tight at all times owing to the uneven or

irregular condition of the wall; and this condition changed from day to day as new sets were put in while going down the shaft. On the day in question there was a hole between the side of the staging and the foot wall side of the shaft. The miners were working on contract, getting paid by the foot for the rock they excavated. They did not have anything to do with putting in the timbers, but there was a dispute whether the plaintiff as shift boss had anything to do with the entire shaft, including the timbering. It appeared that the miners and the timber gang were separate crews, and had separate and distinct contracts. The sets which were being put in were composed of concrete and wood. The lower side of the shaft was called the foot wall, and the upper side was called the hanging wall. These sets would lie next to the walls and two pieces connected them, one at each side of the shaft. The sets were fastened together by means of bolts and nuts. Wooden timbers about 10 inches square and from 3½ to 5 feet in length, called studdles, would be placed lengthwise between the sets on the foot wall, at the ends, and on the hanging wall, and the sets would be drawn tightly against the ends of the studdles by tightening bolts which ran from set to set. It was a disputed question whether, when timbers were being put in on the curve, the tightening of the bolts on the hanging side would have a tendency to draw the sets on the foot side apart and release the studdles on the foot side and permit them to fall.

On the day of the plaintiff's injury, while he was working at the northerly side of the bottom of the shaft, a studdle fell from between the sets, on the foot side while the timbermen were engaged in tightening the hanging bolts, and struck the plaintiff on the back of the neck, or between the shoulders, and seriously, and he claimed permanently, injured him. This studdle fell, either through a space that existed

between the staging and the foot wall of the shaft, or through the ladder hole. Captain Rapson, the head captain of defendant, had full authority over all of the work and workmen in the shaft. He testified that it was his duty to look after the safety of the working places of all of the workmen, and warn them of any dangers to which they were or might be exposed, and with which they were not acquainted, while they were performing their duties. It was undisputed that he was upon the staging when, and for 10 or 15 minutes before, the accident occurred engaged in looking after the work and workmen there. The work of the timbermen was being done in a manner approved by him; but he testified that it was the duty of plaintiff as shift boss to look after all the work in that shaft at that time, that the plaintiff had just gone down the shaft through the staging. We quote a part of his direct testimony:

"I remember Kaaro coming down this shaft and going down below. I had a talk with him. I told him to be careful and look out for himself, and asked him how things were going, how many holes he was going to blast and how he was getting along. After our talk he went down.

"Q. What kind of a place did he go through there, how much space did he have to go through?

"A. Just room enough for a man to go through, about two feet.

"Q. How was that opening made?

"A. Covering over the shaft and allow a manhole for a man to go up and down and keep a false piece of board over the hole. This was taken off while he was going down, after he went down I put the board over the hole, I did that myself.

"Q. Do you know how long that was off before this . accident happened?

"A. About five minutes, I was still on the staging.

"Q. Can you say how this studdle went down?

"A. It backs off towards the foot; * * * rolled over the foot. There was room there for it to go through, there was maybe 12 or 15 inches of room

there.  That was not an extraordinary opening there;
that was about the average.

"*Q.* When you say the average, do you mean that's
the way those sets are?

"*A.* The average room in the shaft.  You got to
have a little room to swing around.  That's about the
average we carry our shaft.  That is a matter of
necessity, such room.

"*Q.* Now, Captain, I want to ask you about the
method of  *  *  *  putting in those sets, what do
you say as to the way that was put in?  Those sets
were put in all the way down that No. 3 shaft.  Was
there anything peculiar about this particular set, was
there any difference in the way this set was put in
from any other set?

"*A.* Not a particle, only just turn the under rail
a little.

"*Q.* That shaft dips at what angle when it leaves
the surface?

"*A.* Eighty for 900 feet.

"*Q.* At the 900 feet it begins to curve?  How far
below the 900 feet was this staging, do you know?

"*A.* Probably at 1,050 it went off at 70 degrees
then, about that.  There were no other men employed
at that shaft except those who were employed at the
bottom, the miners and muckers, and timbermen on
that staging.

"*Q.* At the Ahmeek mine what are the duties of
the shift boss?

"*A.* The way I give them orders they have full
charge of the shaft or full charge of the shift.  Of
course, in mining, rock mining, there are different
levels and different places, they got the whole thing
on that shaft.  There was a shift boss for each shaft,
and Erick was the shift boss this day, had charge of
that shaft.  I would have a day shift boss and a night
shift boss.  The shift boss would be in charge of the
shaft there.

"*Q.* That is he would be in charge of the work?

"*A.* All the work that is in the shaft he is sup-
posed to look after.  Erick Kaaro would be in charge
of the men that day.  I spoke to him about his being
shift boss."

It was a disputed question whether, a short time

before the accident occurred, one of the timbermen was engaged in tightening up a bolt on the foot side (by means of which the studdle which fell was intended to be held in place), and that before the bolt had been sufficiently tightened Captain Rapson ordered this timberman to cease tightening it, and there was testimony pro and con upon the question. The bolts were to hold the studdles in place, and it was the claim of the plaintiff that nobody inspected the studdle to see if it was tight enough in place to prevent its fall.

Plaintiff was originally hired by defendant to work as a miner. About a week before the accident the regular shift boss went away on a vacation, and before going he asked plaintiff to take his place during his absence, and, under the direction of Captain Rapson, plaintiff did so. While he was doing so another shift boss from another shaft visited the bottom of the shaft, and it was a disputed question whether he did more than to see what powder was needed in blasting, or whether he looked over and directed the work. The regular timber boss was absent on the day of the accident. The staging was removed every night and a new staging was erected lower down the shaft every morning, as it took one day to put in a set; and it appears that the staging and its place in the shaft were daily changing as the work of sinking and timbering of the shaft progressed. The case was submitted to the jury by the trial court in a very full charge, and the trial resulted in a verdict and judgment for the defendant. There was no motion for a new trial. The plaintiff has brought the case here on writ of error.

No errors are assigned except upon the charge of the court. We therefore quote the substance of the charge, indicating that portion upon which error has been assigned.

"This is an action brought by the plaintiff against the defendant to recover for personal injuries which plaintiff claims he sustained in the year 1910, while working for defendant in its No. 3 shaft at the Ahmeek mine, which injuries plaintiff claims resulted as a proximate consequence of defendant's negligence."

First assignment of error:

"Now, gentlemen, the plaintiff has brought this action to this court claiming that he was injured as a result of negligence on the part of the defendant company while he was in its employ at the Ahmeek mine on the date in question, and I charge you that it becomes the duty of the plaintiff to show *first,* that he was injured in consequence of negligence on the part of the defendant, and *second,* that he was not guilty of any negligence himself which contributed in the slightest degree to the accident. Unless he shows those facts by a fair preponderance of the evidence, then he is not entitled to recover. Even if he shows the first, that is, that the accident was the result of negligence on the part of the defendant company, still he is not entitled to recover unless he also shows that he was not guilty of any negligence himself which contributed towards the accident."

Second assignment of error:

"The law places the burden upon the plaintiff to maintain his cause of action by a fair preponderance of the evidence. He is the one who has come into court, and the law says to him, you having made claim against the defendant, we impose upon you the duty of maintaining your cause of action here. That is, showing that his cause of action is true, by a fair preponderance of the evidence. If the evidence is evenly balanced or preponderates in favor of the defendant, in either of those cases your verdict must be for the defendant, and you cannot find for the plaintiff unless he shows you those things."

"Plaintiff claims that while he and others were working at the bottom of the shaft, a party of timbermen under supervision of the captain of the mine, were engaged in placing timbers in the shaft some distance above the bottom, and that through the

failure of the defendant to exercise reasonable care to protect plaintiff from injury due to objects which might fall from above him in the shaft, he was injured by being struck by a piece of timber called a studdle, which fell from the place where these timbermen were working. The particular grounds of negligence which plaintiff relies on, are that the defendant did not cover up and protect the shaft above where plaintiff was working, so as to prevent objects, such as a studdle, from falling down and injuring plaintiff, and that defendant was also negligent in that before and at the time the studdle in question fell, it was installing the timbering in a curve in the shaft and where the studdles on the foot side of the shaft would be liable to be loosened and permitted to fall when the studdles on the hanging side were being tightened, and defendant failed to take any measure to prevent such from falling. And further, that the captain of the mine, while a man was tightening a bolt which was intended to tighten and secure the studdle which fell, ordered the man who was tightening it up to stop tightening it before it was sufficiently tightened to be reasonably safe, and further, that defendant was guilty of want of ordinary care in not warning plaintiff of the fact that he was liable to be struck by falling objects on the day of the occurrence of his injuries, due to the condition in which the staging mentioned in the testimony was on the day of the accident, and to the manner in which the work of putting the timbers was being carried on, on that day.

"It was the duty of the defendant to the plaintiff to exercise reasonable care, skill, and diligence to make and keep the place where plaintiff was working when injured in as reasonably safe and secure condition as it could have been kept.

"It appears from the evidence that in the exercise of ordinary care to prevent plaintiff's being injured, due to being struck by falling objects, the defendant should have so constructed and maintained the staging upon which the timbermen were working that a studdle could not fall down upon plaintiff from the place where the studdle in question fell, then it was defendant's duty to have so constructed and main-

tained such staging and it would be negligence on its part to fail or omit to do so.

"If you find from the evidence that the manner in which the work of timbering the shaft was being conducted at and before the time of the accident was one in which plaintiff and those working in the bottom of the shaft were not afforded reasonable protection against being struck by falling objects, and that defendant did not exercise reasonable care to adopt and use in the carrying on of that work a reasonably safe method, and used and employed an unsafe method in carrying on the work at the time of the accident, then that would be negligence on defendant's part.

"The defendant was chargeable in law with knowledge of all dangers to men in the bottom of the shaft which were liable to result from the methods employed in timbering the shaft, which would be known to a person of reasonable skill and experience in the work and business of timbering shafts.

"The defendant was bound to make such reasonably, careful, skillful, and frequent inspections and keep such reasonable watch over those means and appliances which were designed and used to prevent objects from falling through the shaft to the plaintiff's injury as a reasonably careful and prudent employer would use and exercise to protect his servants from injury.

"The defendant was chargeable with notice and knowledge of all conditions and things affecting the safety of plaintiff's working place, which were known to the mining captain, and which would have been learned by him by the exercise of ordinary care for the safety and protection of the plaintiff.

"If reasonable care was not used to protect plaintiff from injury due to objects falling down the shaft and striking him, it would be no excuse for the defendant that it had given instructions to the timbermen, or any other person, to use such care for his protection. That was a duty which defendant could not impose upon any person or persons so as to escape responsibility to plaintiff in case the duty was not performed.

"Although plaintiff assumed the ordinary risks of his employment, he did not assume the risk of any danger which defendant could, and by the exercise

of ordinary care, would have protected him against. The ordinary risks of plaintiff's employment were those which were obviously incident to the employment, after defendant had used all such reasonable care, skill, and diligence to furnish and maintain for plaintiff a reasonably safe place in which to perform his work, as a reasonably careful and skillful employer would have used.

"If plaintiff's injury resulted from a risk which was not ordinarily incident to his employment, then the burden of proof would be upon the defendant to show that he knew it and appreciated such risk.

"If at the time of the occurrence of plaintiff's injury, and without his knowledge, an extraordinary space existed between the staging and foot wall of the shaft, through which objects might and could fall down through the shaft to plaintiff's injury, and if under such circumstances an ordinarily careful and prudent employer would have warned and notified persons working at the bottom of the shaft of that fact, then it would be the defendant's duty to have warned the plaintiff of that fact, and if it failed to do so, that would be a ground of recovery for the plaintiff in this case. In order for the plaintiff to recover in this case, it is not necessary for him to establish all the grounds of negligence set up by him, but if he has established any one or more of them that would be sufficient."

Third assignment of error:

"I charge you further, gentlemen, in order to entitle the plaintiff to recover, he must establish by a fair preponderance of the evidence to your satisfaction not only the negligence of the defendant company, but also that the plaintiff was himself not guilty of any negligence or want of care which contributed in any way to the accident."

Fourth assignment of error:

"On the question of plaintiff's contributory negligence, it makes no difference whether you find from a preponderance of the evidence that the defendant was negligent, if you also find and believe from the evidence that the plaintiff himself failed to use

ordinary care with respect to the situation, he is not entitled to recover."

Fifth assignment of error:

"The law does not require an employer to make the place of work of his employees absolutely safe. He is only bound—that is, the employer is only bound—to use ordinary care and diligence in making the place of work reasonably safe, and if the accident which happened is one which an ordinarily prudent man would not have anticipated it becomes immaterial that a very small expense would have prevented the accident in question."

Sixth assignment of error:

"If you find that the method of building the staging at the time in question was the usual, customary, and accepted way adopted by mining companies in timbering shafts, and that it was not practicable in putting in sets of timbers and in building such stages to close up every possible opening through which objects might fall, and that the opening described by the testimony through which the studdle is supposed to have fallen was not an unusual one, then there is no negligence on the part of the company in leaving such an opening at this particular place. If you find that it could not have been reasonably anticipated by past experience in timbering shafts that this studdle would become loosened and fall away from the set, then the falling of the studdle was a pure accident and no negligence can be attributed to the company."

Seventh assignment of error:

"If you believe that the mining captain stopped the witness Jarvi from tightening up the studdle, but at the same time believe that the captain in doing that exercised his best judgment after a careful consideration of the situation, there can be no negligence attributed to the company on that question. If after using reasonable care and prudence under the circumstances he used his best judgment, then the company cannot be held liable."

Eighth assignment of error:

"If you are convinced by a fair preponderance of the testimony that the plaintiff was the shift boss and was himself in charge of the men and the work in the shaft at the time this staging was built and on the day when he was injured, then any negligence of any kind connected with the construction of the staging or the loosening and falling of the studdle must be attributed to the plaintiff himself and he cannot recover."

Ninth assignment of error:

"If you find from the evidence that the plaintiff himself was familiar with the method used in that shaft of constructing stagings and knew or must have known from his experience in working in that shaft that openings were habitually left through which objects might fall, and that an ordinarily prudent man with his experience would have appreciated and understood any danger arising from such openings, then he must be held to have assumed any risk of danger arising from the leaving of such openings and he cannot recover."

Tenth assignment of error:

"If you find that the injury resulted from the failure of any member of the timber gang to properly construct the staging or to properly tighten the bolts between the two sets of timbers, barring direct orders of the captain, which held the studdle in place, such act or acts of the timbermen were acts of fellow-servants of the plaintiff, and for them the defendant is not liable."

Eleventh assignment of error:

"Any injury resulting to the plaintiff from the negligence or failure to use due care by any of the timbermen was an injury occurring from the acts of fellow-servants of the plaintiff for which the company is not liable."

Twelfth assignment of error:

"It is the rule of law, gentlemen, that where a person is injured through the negligence of a fellow-servant that then his employer is not liable."

Thirteenth assignment of error:

"The plaintiff assumes all the usual risks of his employment as a miner or shift boss in the bottom of the shaft, and among these is the risk that fellow-servants will sometimes be careless and injuries result therefrom. If you find the plaintiff's injury was the result of the carelessness of the timbermen, the plaintiff cannot recover."

Fourteenth assignment of error:

"While a workman does not assume the risk of dangers arising out of the negligence of his employer, there are dangers connected with the work of working underground which cannot be reasonably anticipated or foreseen and are incident to the very employment of mining. The risk of injury from such accidents is a risk which every man who works underground voluntarily assumes when he enters into such employment, and if you find that this accident was such an accident the plaintiff must be held to have assumed the risk and cannot recover."

Fifteenth assignment of error:

"There is no evidence in the case that plaintiff has suffered any injuries likely to be permanent, and he is not entitled to recover for any permanent injuries, even if you should find that the plaintiff is entitled to recover a verdict from the defendant."

Sixteenth assignment of error:

"I charge you, gentlemen, that the master is not bound to guard against accidents not likely to happen, and the question will be for you to consider, was this accident one that was likely to happen? Was it one that could have been foreseen by the exercise of reasonable care and diligence in carrying on that work? Now you know what the situation was there. You have heard the evidence and it simmers right down to what took place at that time, and it is undisputed what fell down the shaft, and it is for you to say under all the circumstances, was that accident one that could be reasonably foreseen and avoided? One that an ordinarily prudent man exercising ordinary care and diligence. That is all that is required

of the defendant. Was it such an accident that could be avoided by the exercise of such care? Now, if it was, then the company should have avoided it. But, if on the other hand, gentlemen, the plaintiff has not satisfied you by a fair preponderance of the evidence that the accident was one that could have been foreseen and avoided by the exercise of reasonable care and diligence, such care and diligence an ordinary prudent person would exercise under like circumstances, then I charge you the defendant cannot be held liable, and your verdict must be for the defendant."

Seventeenth assignment of error:

"You are the sole judges of the weight of the evidence. You have heard the evidence and seen the witnesses on the stand and had an opportunity of observing the witnesses as they have appeared here on the witness stand, and you are the sole judges of the weight you will give that testimony. You will give it such weight as you, in your judgment, think it is entitled to, you being the sole judges of both the questions of fact involved and the weight of the evidence. That is the weight you will give the evidence in arriving at your verdict."

Eighteenth assignment of error:

"So, gentlemen, there will be several questions of fact for you to pass upon. You will remember first that the plaintiff must prove to your satisfaction that the accident in question was the result of negligence on the part of the defendant company, and that he was not himself guilty of any contributory negligence which contributed in the slightest degree towards this accident. Now, those two things he must prove by a fair preponderance of the evidence. And, gentlemen, considering the question of the accident, you will consider the circumstances under which it took place and you will arrive at your conclusion whether it was such an accident that should be reasonably anticipated and avoided by the defendant. If it was such an accident and the plaintiff was not guilty of contributory negligence, it will be your duty to find for the plaintiff. If, however, the accident was not one which would be reasonably anticipated

by ordinary care, then, as I have already charged you, you will find for the defendant."

The appellant has classified the errors relied upon as follows:

*(a)* Error in instructions relating to the question whether defendant ought to have reasonably anticipated the occurrence of the accident; raised by the fourteenth, sixteenth, and eighteenth assignments of error.

*(b)* Error in instructions relating to burden of proof; raised by the first, second, third, sixteenth, eighteenth, nineteenth, and twenty-seventh assignments of error.

*(c)* Error in instructions relating to contributory negligence; raised by the first, third, fourth, eighth, twentieth, twenty-first, and twenty-eighth assignments of error.

*(d)* Error in instructions relating to the fellow-servant rule; raised by the tenth, eleventh, eighteenth, twenty-fifth, twenty-sixth, and thirty-first assignments of error.

*(e)* Error in instructions relating to the assumption of risk; raised by the ninth, thirteenth, fourteenth, twenty-second, and twenty-ninth assignments of error.

*(f)* Error in instructions relating to doctrine of safe place; raised by the sixth, seventh, and sixteenth assignments of error.

*(g)* Instructions which are argumentative and lay too great stress upon, and give undue prominence to, and unduly emphasize rules of law, issues, claims, and testimony favorable to defendant; raised by the first to tenth, inclusive, and thirteenth to thirty-third, inclusive, assignments of error.

We will consider the questions raised in the order stated by counsel.

*(a)* Whether or not defendant should have reasonably anticipated that this accident would occur.

The charge states the proposition in several ways, but the real question was, Was the accident one which could be reasonably avoided? We call attention to other parts of the charge above quoted, upon the

subject, on which error was not assigned. No error has been assigned upon any refusals to charge as requested, and we have the right therefore to conclude that all of plaintiff's requests to charge were given. There was evidence by a number of witnesses that they never knew of a studdle falling out before; and Captain Rapson testified that the studdle was "put in as proper as we could, as proper as they were ever timbered. We did not expect them to fall out, we didn't expect this to fall out either. They were put in the same as we always put them in." It should be borne in mind that this case was submitted to the jury upon the evidence, and it was a question for the jury whether or not defendant should have reasonably anticipated that this accident would occur, in view of all the evidence in the case. They were instructed that:

"The defendant was chargeable in law with knowledge of all dangers to men in the bottom of the shaft which were liable to result from the methods employed in timbering the shaft, which would be known to a person of reasonable skill and experience in the work and business of timbering shafts. * * * If reasonable care was not used to protect plaintiff from injury due to objects falling down the shaft and striking him, it would be no excuse for the defendant that it had given instructions to the timbermen, or any other person, to use such care for his protection. That was a duty which defendant could not impose upon any person or persons so as to escape responsibility to plaintiff in case the duty was not performed."

Manifestly, this portion of the charge fairly submitted the question. We think it was a fair question for the jury whether the accident can be said to be one which even a prudent man would have been likely to anticipate.

An employer cannot be held liable as for negligence in omitting to guard against accidents that are

not likely to happen. *Sjogren* v. *Hall*, 53 Mich. 274 (18 N. W. 812). We find no error in that part of the charge here complained of.

(b) Questions relating to the burden of proof. We have examined the part of the charge relating to the subject of burden of proof. It was very full, and we think fair. The jury were instructed, among other things, that:

"If plaintiff's injury resulted from a risk which was not ordinarily incident to his employment, then the burden of proof would be upon the defendant to show that he knew it and appreciated it."

Complaint is made because the court said:

"I charge you further, gentlemen, in order to entitle the plaintiff to recover, he must establish by a fair preponderance of the evidence to your satisfaction not only the negligence of the defendant company, but also that the plaintiff was himself not guilty of any negligence or want of care which contributed in any way to the accident."

Complaint is made because the phrase "to your satisfaction" was used, and appellant refers to many cases in other jurisdictions. It will be noted that the language of the court was:

"He must establish by a fair preponderance of the evidence to your satisfaction," etc.

The expression was obscure, but may be interpreted to mean that the jury must be satisfied that there was a fair preponderance of the evidence. If that was the meaning, the language would not be objectionable. An examination of the entire charge will disclose that in many instances the court stated the rule correctly upon the subjects of preponderance and burden of proof. Had counsel desired a more extended charge upon the subject they should have preferred a request. *Germaine* v. *City of Muskegon,* 105 Mich. 213 (63 N. W. 78) ; *Strand* v. *Railway Co.,*

67 Mich. 380 (34 N. W. 712). We find no reversible error here, and think the jury were not misled.

*(c)* Questions concerning contributory negligence. Here again counsel refer entirely to authorities in other jurisdictions. We are of the opinion that the charge upon this subject finds support in our own decisions. We think there was evidence, if believed by the jury, which tended to show the plaintiff guilty of contributory negligence. The witness Reed, the former shift boss, testified:

"I told him (plaintiff) to go in my place, and he knew what work was in my place. My duties were to have charge of the shaft, everything."

This included charge of the timbermen. The uncontradicted evidence was that plaintiff had been up and down through the hole in the staging shortly before the injury; and it cannot be said that he did not know, or should not have known, its condition, including the hole back of the timbers, through which the studdle in all probability fell. The question of contributory negligence was properly submitted to the jury.

*(d)* Questions concerning the fellow-servant rule. In the argument of this question counsel for appellant have cited many authorities upon the proposition that the master cannot delegate the duty to make the place safe to an employee and escape liability, if that servant is negligent. We recognize the rule, but the question is as to its applicability here. We think that the timbermen working on this temporary staging were fellow-servants of the plaintiff, and were not vice-principals. The staging past which this studdle fell was built the morning of the accident, for the purpose of putting in that particular set only. It was changed from day to day. The blasting had left irregularities behind the timbers used in placing the sets. It was a question of fact whether this condition

was not known by the plaintiff. To what extent Captain Rapson was responsible for the falling of the studdle was in question and dispute and became a question of fact. The duty of carefully constructing these stagings and working on them was certainly not a nondelegable duty of defendant. It was a duty which defendant might and did delegate to the coemployees of plaintiff, and those coemployees were his fellow-servants for whose negligence defendant was not responsible. *Amoe* v. *Engineering Works*, 151 Mich. 212 (114 N. W. 1010).

The work of sinking the shaft, and especially in timbering it, was done in a temporary and changing place. The distinction between temporary places, built to assist in construction, such as stagings which are daily changing, and permanent places, within which men are expected to perform labor, is pointed out in *Petaja* v. *Mining Co.*, 106 Mich. 463-468 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505), and cases there cited; *Landowski* v. *Chapoton*, 137 Mich. 429 (100 N. W. 564); *Risku* v. *Iron Cliffs Co.*, 163 Mich. 523-527 (128 N. W. 747). While the shaft and timbering were in process of construction the doctrine of safe place and of nondelegable duty did not apply. We think there was no error in that part of the charge relating to the doctrine of fellow-servant.

(e) Instruction relating to assumption of risk. Taking the whole charge together, we find no reversible error in the charge upon this subject. We have sufficiently referred to the evidence upon the subject.

(f) What we have already said is sufficient upon the subject of safe place. We are of opinion, for the reasons already stated, that the doctrine of safe place did not apply, and that the court might properly have so directed. The subject, however, was fully submitted, and the jury having passed upon it appellant cannot complain.

*(g)* The assignments of error upon instructions which it is said were argumentative and laid too much stress upon, and gave undue prominence to, and emphasized rules of law, issues, claims, and testimony favorable to defendant, are too general to be considered. A consideration of this subject would necessitate going through the entire charge, and picking out sentence by sentence matters to which our attention is not directed. *Tupper* v. *Kilduff*, 26 Mich. 394; *Wanner* v. *Mears*, 102 Mich. 554 (61 N. W. 2).

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.