KOSKELL *v.* NEWPORT MINING CO.

1. MASTER AND SERVANT — MINES AND MINING — TRAMMERS—FEL-LOW-SERVANTS.

Trammers in a mine who with the miners prepare a part of the drift or other portion of the mine, which has been newly blasted, for the timbermen to place supports, are fellow-servants with miners, all being engaged in creating or constructing a safe place to work; so that neglect of the miners to properly sound and bar down the unsafe rock was the act of fellow-servants of a trammer who was engaged in work in an untimbered portion of the drift.[1]

2. SAME—ASSUMPTION OF RISK.

Upon plaintiff's testimony that the miners did not trim down or sound the place at all, he must be held to have known and assumed the risk of the failure to perform that duty, although one of the miners' assured him that the place was safe.[2]

---

[1] As to the liability for injury to employees in mine through negligence of fellow-servant, see notes in 50 L. R. A. 437 and 461.

[2] On the question of the servant's assumption of risk from changing condition of excavations in mine during progress of the work, see note in 19 L. R. A. (N. S.) 352.

For the liability of the master for injuries due to dangerous condition of earth and rock left after blasting, see note in 48 L. R. A. (N. S.) 1123.

Error to Gogebic; Cooper, J.   Submitted June 10, 1914.  (Docket No. 57.)    Decided October 2, 1914.

Case by Edward Koskell against the Newport Mining Company for personal injuries.   Judgment for defendant upon a directed verdict.  Plaintiff brings error. Affirmed.

*Le Gendre & Driscoll,* for appellant.

*C. W. Westerman* (*Chas. F. Fawsett,* of counsel), for appellee.

KUHN, J.   The plaintiff has appealed from a verdict directed for the defendant by the trial judge.   At the time of his injury he was working for the defendant company as a trammer, and had been engaged in this employment for a period of three months.   The accident occurred in the main east drift of the seventeenth level, about 1,000 feet easterly from the shaft, and was caused by the fall of about a ton of what the miners call "slip ore" from the side of the drift, about three feet in toward the breast from the then most easterly set of timbers.   On the day of the accident, about 12 o'clock midnight, a blast took place, and at 1 o'clock the miners and trammers went back to work.   The trammers went about cleaning up the track, working under the timbers, and while they were doing this the miners Johnson and Trasti examined the untimbered place.   Upon receiving an assurance from Johnson that the place was safe, the plaintiff went into the untimbered place and started to shovel ore, and worked there until 4:30 a. m., when his injury occurred.

The mining  operation in which the men were engaged is explained by the witness Johnson, the miner, who testified on cross-examination:

"The timbermen put the timbers in, but the miners

and the trammers get the place ready for the timber-men to put in the timbers, but they can't put in the timbers until after the trammers have gotten out the dirt and cleaned the place out. A miner usually gets hurt and dies more often than the trammer does. He doesn't like to get hurt, no one does. When we are making this place safe by trimming it down and sound-ing it, we are doing that for our own protection as well as the trammers, and the trammers are right there with us, and they can look and see for them-selves also; they have eyes of their own; they can look for themselves. It may have been a little over three months that Koskell had been working with me as a trammer. I was working in that drift, making that drift that he got hurt in, about three months. He was working right along with me all the time that I was helping to make that drift and could see what kind of ground it was that I was going through."

The testimony shows that the work the men were engaged in was mining the ore, and incidentally mak-ing a permanent place to be used in future mining operations. The place which was being made was the timbered passageway along which the ore was to be carried as it was mined. In working in these drifts the work of the miners was to make the holes and blast, and after the blast to pick it down and sound it and get the place ready for the trammers to take out the dirt. After a space sufficiently large had been blasted and cleaned out, the timbermen put in timbers. But this cannot be done until the trammers have taken out the loose ore and dirt, and the necessary space has been cleared.

The unsafe place in which plaintiff was injured was an incident of the work, and was created by the plain-tiff's coservants. It is well-established that the doc-trine of safe place and nondelegable duty does not ap-ply to a place while in the process of construction and being made safe.

The facts in this case, in our opinion, clearly bring it within the rule stated in the case of *Petaja* v. *Mining Co.,* 106 Mich. 463 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505), affirmed in *Karppinen* v. *Mining Co.,* 154 Mich. 528 (118 N. W. 1118) ; *Dunn* v. *Dredge & Dock Co.,* 161 Mich. 551 (126 N. W. 833) ; *Risku* v. *Iron Cliffs Co.,* 163 Mich. 523 (128 N. W. 747) ; *Kaaro* v. *Mining Co.,* 178 Mich. 661 (146 N. W. 149). Under the decisions of this court, the miner, trammer, and timbermen, being all engaged in the one common undertaking of driving the drift and taking out the ore, were fellow-servants, and if according to the theory of the plaintiff the miners neglected their duty and did not properly examine the excavation and trim down and sound as should properly have been done, their neglect is that of a fellow-servant and does not bind the defendant.

The plaintiff testified that on this occasion the miners did not trim down or sound the place at all, although he knew it was customary for them to do this in order to determine that the place was safe. If after seeing this neglect of duty the plaintiff elected to continue to work, it must also be said that he assumed the risk.

Our attention is called to the case of *Scendar* v. *Copper Co.,* 169 Mich. 665 (135 N. W. 951), which is clearly distinguishable from the case at bar. It appears in that case the plaintiff was instructed by the employer that the place would be kept safe for him, and that he must abide by the judgment of the captain, shift boss, and miners as to whether or not the place was safe, and was thus relieved of the necessity of looking out for himself. Neither does it appear that the plaintiff had notice that they were negligent in the performance of the duty which they were required to perform.

Under the evidence in this case a verdict was properly directed for the defendant, and the judgment is therefore affirmed.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.