## STONE *v.* BENNETT.

1. MASTER AND SERVANT—SAFE PLACE—PERSONAL INJURIES—FELL-ING TREES.

   Where plaintiff, while engaged with others, all practical woodsmen, in felling trees, was injured by a falling tree, cut by fellow servants, the doctrine of safe place does not apply, in an action against the master; said place having been made unsafe only through the act of plaintiff or his fellow employees.[1]

2. SAME—OBVIOUS DANGER—ASSUMPTION OF RISK.

   The master is not negligent in failing to furnish a place safe as against obvious dangers.[2]

3. SAME—ASSUMPTION OF RISK.

   Where plaintiff was as well aware of the peculiar dangers of his work as was his master, he must be *held* to have assumed the risk.

4. SAME—NEGLIGENCE—FELLOW SERVANT.

   Neither could plaintiff recover where the negligence counted on was that of fellow servants.

5. SAME—WARNING SERVANT—NEGLIGENCE.

   Until a master knows and appreciates, or in the exercise of due care should know and appreciate, a danger to his employee, there is no obligation upon him to warn the employee of such danger; so where defendant attempted to warn plaintiff of his danger from a falling tree as soon as he realized his danger, defendant was not guilty of negligence.[3]

---

[1]On servant's assumption of risk from changing condition of work during progress of work, see note in 19 L. R. A. (N. S.) 340.

[1]On applicability of rule as to safe place where the conditions of work are changing, see note in 28 L. R. A. (N. S.) 1267.

[2]On assumption of obvious risk of hazardous employment by servant, see note in 1 L. R. A. (N. S.) 272.

[3]On duty to give warning where trees are being felled, see note in 46 L. R. A. (N. S.) 86.

Error to Chippewa; Fead, J. Submitted October 18, 1916. (Docket No. 76.) Decided December 22, 1916.

Case by Frank Stone against C. Y. Bennett for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*F. T. McDonald,* for appellant.

*R. W. Nebel* and *Le Gendre & Driscoll,* for appellee.

.The plaintiff, a practical woodsman of six years' experience, was employed by the defendant with others to cut down and get out tamarack piling. On the 29th day of March, 1912, the plaintiff and one Lefevre were told by the defendant to work together in the cutting operation. There were either two or three other gangs, containing two men each employed at the same time in the same work. The plaintiff and his partner, as well as the other men engaged in this particular work, were supposed to be under the direction of the defendant's 'foreman, Schmidt. It appears to have been Schmidt's duty to pass through the timber and to blaze such trees as were suitable to fill the contract for piling which the defendant at that time was taking out timber to fill. It was the duty of the plaintiff and his partner, as well as the other gangs, to cut the trees so blazed by the foreman and to cut off the tops at the requisite distance so as to make piling of the size and length required by defendant's contract. It is the claim of plaintiff that shortly after noon of that day the defendant himself pointed out to the plaintiff and his partner certain trees which they were to cut, and among them the particular tree upon which the plaintiff was working at the time he sustained the injury complained of. Following the instructions claimed to have been given the plaintiff

by the defendant himself, plaintiff and his partner cut down three trees, and then proceeded to the fourth, upon which they were at work at the time of the accident. Having felled that particular tree, plaintiff and Lefevre went to the top, and were in the act of sawing off the top when another tree was felled by what was known as the third gang, consisting of Heaney and his son. In falling, the top of this tree reached the point where the plaintiff and Lefevre were sawing off the top of the tree which they had felled. It struck the plaintiff, and caused the injury for which this suit is brought. A diagram of the situation, not claimed to be exactly accurate, but illustrative of the situation, was introduced in evidence and appears on page 444.

It will be noticed that there are no measurements on the diagram. The point A thereon indicates the stump of the tree cut down by the plaintiff and Lefevre; the point B the stump of the tree cut down by Heaney and his son, and the point P the place where the plaintiff was injured. The exact distance between the stumps of the two trees does not appear, but is estimated in the record by the plaintiff and his partner, Lefevre, to have been about 50 feet. It is undisputed upon this record that after plaintiff and Lefevre had felled their tree and were in the act of cutting off the top, the defendant himself came along the loging road and stopped within 10 or 15 feet of where they were at work. He testified that he saw Heaney and son working on their tree, and stood there to await its fall. As soon as the Heaney tree started to fall, Heaney and his son called loudly, "Timber." This call is understood among woodsmen to mean that a tree is about to fall, and that those in the immediate vicinity must take precaution for their safety. Defendant, who was watching the tree fall, saw that it was falling toward himself, the plaintiff, and Lefevre, and he joined in the warning cries. Defendant and Lefevre

Plaintiff's Exhibit A.

jumped aside and escaped injury, but plaintiff was
caught by the top of the falling tree, and sustained a
broken leg as a result. Both plaintiff and Lefevre
testified that they did not know of the proximity of
Heaney and his son, or of the fact that they were en-
gaged in cutting down a tree so near to the one upon
which plaintiff was engaged. Both gave evidence to
the effect that they heard chopping in several direc-
tions, and in one place Lefevre testified that he heard
chopping west of him, which would be the direction

in which Heaney and his son were working. Both testified that there. was underbrush which prevented them from seeing Heaney and his son at work. The contention as to the condition of the ground at the point of the accident is flatly denied by the defendant and his witnesses. He testified that while he was within 10 or 15 feet of the plaintiff and Lefevre, Heaney and his son were in full view.

At the conclusion of the plaintiff's case the defendant moved for a directed verdict on the following grounds:

"That there is no evidence in the case establishing any of the acts of alleged negligence in the declaration, and no evidence in the case of any negligence on the part of the defendant. That the dangers to the plaintiff at the placè he was. working are risks incident to his employment. That as shown by the testimony now, the place where he was working was made unsafe, if unsafe at all, by the changing conditions of the work, and made so by the acts of his co-employees. That the proximate cause of the injury to the plaintiff was the direct result of the felling of a tree by fellow servants of the plaintiff, for which the defendant is not responsible. That, under the testimony, the plaintiff has shown himself to be guilty of contributory negligence, which negligence contributed to the injury received."

This motion was denied by the court, and the case was submitted to the jury under instructions which permitted the jury to find defendant guilty of negligence in either one or both of two respects: *First,* in placing the plaintiff at work upon a tree which, by reason of the proximity of his fellow servants, Heaney and his son, upon another tree, made the place where plaintiff was directed to work unsafe; and, *secondly,* in that the defendant, when he came up to the place where plaintiff and Lefevre were cutting the top of their tree, failed to warn plaintiff of the danger he incurred from the proximity of. Heaney and son, then

known by defendant to be at work in felling the tree which caused plaintiff's injury. Plaintiff had verdict.

BROOKE, J. (*after stating the facts*). The testimony shows that the woodsmen were directed to fell the trees toward the logging road shown along the north side of the diagram. It also tends to show that the tree cut by Heaney and son was "notched" so as to fall to the north. It also appears that there was a wind blowing on the day of the injury from the northwest, and that such wind probably caused the tree to fall nearly due east, instead of north, as intended. Plaintiff and Lefevre were not only experienced woodsmen, but were in the full possession of all their faculties. Both swear positively, although Heaney and son were at work chopping and sawing upon their tree within a distance of about 50 feet from where they themselves were, that they did not hear or see them. This statement would seem almost incredible, but, whether true or false, it is certainly true that Heaney and his son knew of the proximity of the plaintiff and Lefevre, because plaintiff's tree had fallen but a few minutes before Heaney's tree fell, and while Heaney and his son were at work upon it. It is undisputed upon this record that Heaney and son were expert woodsmen of large experience. Defendant saw the Heaney tree and how it was notched, and his experience as a woodsman led him to believe that it would fall to the north, a belief doubtless shared by Heaney and his son.

The first question presented for consideration is whether the learned circuit judge erred in submitting to the jury the proposition as to whether defendant was guilty of negligence in placing plaintiff at work in an unsafe place. Upon this point much reliance is placed by the plaintiff upon the case of *Asplund* v. *Mining Co.*, 177 Mich. 529 (143 N. W. 633). This case we think is not controlling. The place at which

plaintiff was set to labor was in itself safe. It was made unsafe only through the act of himself or his fellow employees, and was constantly changing. Under such circumstances the doctrine of "safe place" does not apply. We have held that where the workman must make his own place to carry on his work, the principle is inapplicable. *Andrews* v. *Mining Co.,* 180 Mich. 72 (146 N. W. 394) ; *Kochin* v. *Copper Co.,* 181 Mich. 543 (148 N. W. 252) ; *Koskell* v. *Mining Co.,* 182 Mich. 586 (148 N. W. 699).

The master is not negligent in failing to furnish a place safe as against apparent and obvious dangers. *Soderstrom* v. *Lumber Co.,* 114 Mich. 83 (72 N. W. 13) ; *Nephew* v. *Whitehead,* 123 Mich. 255 (81 N. W. 1083).

As to the plaintiff's knowledge of the dangers surrounding him in the work upon which he was engaged, he testified upon cross-examination in part as follows:

"*Q.* While you were working there with Lefevre, you heard men working in the woods, on all sides of you, didn't you?

"*A.* Yes, sir. *  *.  *

"*Q.* Didn't hear any saws—heard men chopping?

"*A.* Yes, sir. *  *  *

"*Q.* You realized the position you were in, and hearing the men chopping around you, that you might be hurt by a tree falling, didn't you?

"*A.* Yes, sir.

"*Q.* And you knew that as you would move about in the bush, you would have to look out for such things, didn't you?

"*A.* Yes, sir. *  *  *

"*Q.* You had cut cedar before, hadn't you?

"*A.* Yes, sir.

"*Q.* And had been in the woods for six or seven years, both in Michigan and Minnesota?

"*A.* Yes, sir.

"*Q.* And had all kinds of forest products, such as we have in Chippewa county, hadn't you, before this time?

"*A.* Yes; all kinds of wood.

"*Q.* You had cut down trees a great many times?

"*A.* Yes, sir.

"*Q.* You knew before taking employment with Mr. Bennett that a tree sawed at the base clear through would fall to the ground, didn't you?

"*A.* Yes, sir. * * *

"*Q.* You knew that it was dangerous to be around where trees were liable to fall, didn't you?

"*A.* Yes, sir.

"*Q.* You knew that a person working in the woods would have to keep his eyes and ears open, and look out for danger from falling trees, didn't you?

"*A.* Yes, sir."

It is, we think, clear that the plaintiff was just as well aware of the peculiar dangers attendant upon his work as was his master. His place of employment was safe unless by his own acts or the acts of his fellow servants it was made unsafe. He, therefore, must be held to have assumed the risk.

If the accident occurred by reason of the negligence of Heaney and his son in felling the tree at a point too close to that where plaintiff and Lefevre were working, plaintiff is not aided, as under all the authorities Heaney and his son were fellow servants of the plaintiff.

The second point upon which the judge submitted the case to the jury was the alleged failure of the defendant to warn the plaintiff of his danger. The negligence of the defendant is here predicated upon the alleged fact that he knew of the proximity of Heaney and his son while plaintiff did not. While, as before pointed out, it is difficult to understand how Heaney and his son were visible and audible to the defendant and yet remained unseen and unheard by the plaintiff, still, assuming this to be true, we are unable to perceive how any negligence can be predicated upon the fact that defendant failed to warn plaintiff of his danger. The reason for this conclusion is based upon the fact that defendant himself stood at a point where,

if he had not jumped aside, he would have been injured. He saw the tree Heaney and son were working upon, saw how it was notched, believed it would fall in a certain direction, and did not apprehend any danger therefrom. As soon as it started to fall and he appreciated the fact that it was falling toward plaintiff and himself, he, as well as Heaney and son, attempted to apprise plaintiff of his danger. Until a master knows and appreciates, or in the exercise of ordinary care should know and appreciate, a danger to his employee, there certainly is no obligation upon him to warn that employee of such danger. *Dunn* v. *Dredge & Dock Co.,* 161 Mich. 551 (126 N. W. 833) ; *Poirier* v. *Lumber Co.,* 182 Mich. 678 (148 N. W. 750).

We are clearly of opinion that the learned circuit judge was in error in submitting the case to the jury upon either of the propositions considered, and that he should have directed a verdict in favor of the defendant at the close of the plaintiff's case.

.The judgment is reversed, and there will be no new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.